Opinion filed July 19, 2007


















 
 
  
 
 







 
 
  
 
 




Opinion filed July 19, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00088-CR 

                                                      ________

 

                                    DANIEL LEE FLORES, Appellant

                                                             V.

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 106th District Court

                                                         Gaines County, Texas

                                                  Trial
Court Cause No. 03-3303

 



 

                                                                   O
P I N I O N

 

Daniel Lee Flores appeals his conviction by a jury
of the offense of capital murder by causing the death of Erica Marie Muro while
in the course of an attempted or actual kidnapping.  Because the State did not seek the death
penalty, Flores was sentenced to life
imprisonment in the Texas Department of Criminal Justice, Institutional
Division.  He contends in three issues
that the evidence is legally and factually insufficient to support his
conviction and that the failure to provide him a punishment hearing upon
conviction violated his rights under the Eighth and Fourteenth Amendments of
the United States Constitution.  We
affirm.








Flores contends
in issues one and two that the evidence is legally and factually insufficient
to sustain his conviction.  In order to
determine if the evidence is legally sufficient, the appellate court reviews
all of the evidence in the light most favorable to the verdict and
determines whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).  To determine if the evidence is factually
sufficient, the appellate court reviews all of the evidence in a neutral light.
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling
in part Zuniga v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson
v. State, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); Cain v. State,
958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines
whether the evidence supporting the verdict is so weak that the verdict is
clearly wrong and manifestly unjust or whether the verdict is against the great
weight and preponderance of the conflicting evidence. Watson, 204 S.W.3d
at 414-15; Johnson, 23 S.W.3d at 10-11. 
Flores concedes that he murdered the
victim but insists that the evidence is legally and factually insufficient that
he did so while in the course of kidnapping or attempting to kidnap the victim.

Rachel Hernandez, a friend of the victim,
testified that she was the one who had originally introduced the victim to Flores.  On
cross-examination, she acknowledged that, hours before she was killed, the
victim asked Hernandez to take her shift at McDonald=s
so she could spend time on Super Bowl Sunday with Flores and his family.  However, Hernandez indicated during redirect
examination that what she told a police detective about the time of the
shooting was that the victim had called her crying the night that she died and
asked Hernandez to work for her because she and Flores had gotten into it
again.  Hernandez stated that her memory
was better at that time than at the time of trial.  On further cross-examination, she again
acknowledged having made the later statement to a defense investigator that,
when the victim called, she was not crying and was looking forward to spending
time with Flores and his family.  Hernandez recounted that the victim said
three days before she died that she was going to leave Flores.  Hernandez stated that, on the same day,
Flores (who was very jealous) had told her that he would kill the victim if she
ever left him.








Frank Reyes, the victim=s
stepfather, testified that Super Bowl Sunday, January 26, 2003, was his
birthday.  He said that, on that morning,
he told the victim he was going to go to his sister=s
house later in the day.  He related that
the victim came to his sister=s
house about 7 p.m. and that  she left
after he had eaten saying she would be back and did not want him to leave
because she had forgotten his birthday present. 
He testified she never returned. 
Ellie Muro, the victim=s
mother, testified that on the evening of the murder Flores
called her and told her he had killed the victim.   She said that, when he placed the phone
down, she heard a Agagging
kind of noise.@  She indicated that she thought the victim was
gagging on her own blood.

Anthony Lopez, who was living with Flores=s
mother at the time, testified that the victim was in and out of their house all
the time.  He stated that he spent all of
Super Bowl Sunday drinking, a super bowl tradition.  He said he went to bed about 9:30 p.m.  He indicated he was subsequently awakened by
his daughter banging on his bedroom door. 
He said Flores came to his bedroom
carrying a shotgun and saying that he had shot the victim but that he had not
meant to do it and was sorry.  Lopez
recounted that he Atook off
out of the house@ to go
use his neighbor=s
phone.  He recalled telling police he did
not want to get trapped in the house.  He
said that he heard another shot go off while he was on the phone with the
dispatcher. 

On cross-examination, Lopez acknowledged that he
thought the victim was dead and did not try to pull her out of the room where
she was.  He also acknowledged having
told the grand jury that the victim and Flores appeared to be happy
together.  He said the victim never talked
to him about leaving Flores.

Darrell Hobbs, a retired Seminole police officer,
testified that on the night in question he was shot as he approached the back
door of the residence when he responded to the call about shots fired at the
residence.  He said Flores knew he was a
police officer because about a month before he had taken a criminal complaint
from Flores.

Ronnie Pipkin, a lieutenant with the Seminole
Police Department, testified that he went to the residence in question after Hobbs had been shot.  He indicated that he received the call around
10:25 p.m. or 10:30 p.m. on January 26. 
He said he was able to talk Flores out
of the house at about 1 a.m.

Chad Hallum, also a lieutenant with the Seminole
Police Department, testified about the circumstances of Flores
being talked out of the residence.  While
recalling his efforts at collecting evidence in the house, Lieutenant Hallum
said that he found a clump of hair in a sofa chair in the bedroom where the
victim=s body
was found.  Lieutenant Hallum
acknowledged that the lab of the Texas Department of Public Safety was unable
to determine if the hair was the victim=s
or how it was removed.








Angela Rodriguez, Kathy McCord, and Aaron
Fullerton, all employees of the Texas Department of Public Safety Crime Lab in Lubbock, testified as to
their testing of blood and weapons recovered at the scene of the murder.

Jerry Douglas Spencer testified that he was a
forensic pathologist and the medical examiner of Lubbock County.  He indicated that the authorities in Gaines County
asked him to perform an autopsy on the remains of the victim.  He indicated that he found soot residue in
the area of her right ear or temple, which usually indicated that the weapon
used had been in contact or very close to the body part where the entrance
wound was located.  He said the
trajectory appeared to be somewhat downward. 
He indicated that an entry wound to the back of her head also appeared
to track downward.  He acknowledged that
he was not able to tell whether she was in an upright position at the time the
shots were fired.  He identified the cause
of the victim=s death
as shotgun wounds to the right temple and back of the head.

On cross-examination, Dr. Spencer testified that,
after the first of the two gunshot wounds, the victim would have clearly been
unconscious but could have survived for a couple of hours.  On redirect examination, Dr. Spencer
indicated that, if either of the two shotgun wounds entered the hole in the
wall that was about twelve inches off the floor, it would have been consistent
with the victim being in a sitting or kneeling position.  When the prosecutor suggested that, if the
victim were standing up, whomever fired the shot would have to have had their
hand Amighty
high in the air,@ Dr.
Spencer responded, AOr
standing on a ladder.@








Mickey Browne testified that he is the chief of
police for the City of Seminole.  He said he had four years of experience as a
homicide investigator before becoming chief of police.  He indicated he had been chief for about
sixteen years.  He said that, when the
victim=s mother
talked to Flores on the phone while they were waiting for him to come out, she
told him that she could hear moaning in the background and that Flores asked
her, ACan you
hear your baby dying?@  He testified that he found three holes in the
room where the victim was found:  one in
the ceiling, one in the wall, and one in the floor.  He related that, while he found no projectile
as one would have expected if the holes in the ceiling or floor had resulted
from the shooting, he did find a projectile outside the house near the outside
location of the same hole that was observed in the interior wall.  He expressed his opinion, based upon all of
his observations and in light of his years of training, that the victim was in
a kneeling or sitting position at the time she was shot.

On cross-examination, Chief Browne acknowledged
that the victim=s mother
also told him that Flores had earlier called
her at her house and told her that he had killed the victim.  He also stated that in his opinion the first
shot would have resulted in instantaneous incapacitation.

Flores contends
that the evidence is insufficient to show that he murdered the victim while in
the course of committing kidnapping.  A
person commits capital murder if he or she commits murder in the course of
committing or attempting to commit kidnapping. 
Tex. Penal Code Ann. '19.03(a)(2) (Vernon Supp. 2006).  A person commits kidnapping by intentionally
or knowingly abducting another person.  Tex. Penal Code Ann. ' 20.03(a) (Vernon 2003).  AAbduct@ means to restrain a person with intent
to prevent his liberation by secreting or holding him in a place he is not
likely to be found or by using or threatening to use deadly force.  Tex.
Penal Code Ann. '
20.01(2) (Vernon
Supp. 2006).  ARestrain@ means to restrict a person=s movements without consent so as to
interfere substantially with the person=s
liberty by moving the person from one place to another or by confining the
person.  Tex. Penal Code Ann. '
20.01(1) (Vernon
Supp. 2006).  There is no requirement for
the State to prove that a defendant moved his victim a certain distance or that
he held him or her a specific length of time before he or she can be found
guilty of kidnapping.  Hines v. State,
75 S.W.3d 444, 447 (Tex. Crim. App. 2002).

A jury could reasonably determine from the
evidence that Flores restrained the victim by using or threatening the use of
deadly force when he approached her at close range with the shotgun and that
Flores, rather than seek medical treatment for the victim, continued to
restrain her until she died, shooting her again somewhat later, shooting one
officer coming to her aid, and holding others at bay for several hours before
surrendering.  We hold that the evidence
is legally and factually sufficient to show that Flores kidnapped the victim,
restraining her by using or threatening the use of deadly force.  








Flores contends that the evidence is factually
insufficient to show kidnapping because: 
(1) the victim lived with him at his mother=s
home; (2) the victim, though unmarried, had moved in with him; (3) Lopez, the
man who lived with his mother, never saw Flores and the victim fight and said
that they appeared to him to be happy; (4) the victim was looking forward to
spending super bowl with Flores and his family and called to get someone to
cover her at McDonald=s
so she could be with him; and (5) in examining the victim=s body, there was no way to determine
her position when the shotgun was fired, such as whether she was kneeling or
sitting.

Flores=s
argument does not mention earlier testimony by Hernandez that she had told a
detective that the victim was crying when she called the evening of the murder
to ask her to fill in for her at McDonald=s,
indicating that she and Flores had gotten into it again and that her memory was
better then than at trial.  None of the
matters Flores mentions, even if true, would prevent a fact- finder from
reasonably determining that Flores committed the murder while in the course of
kidnapping or would cause us to conclude that the evidence supporting the
verdict is so weak that the verdict is clearly wrong and manifestly unjust or
that the verdict is against the great weight and preponderance of the
conflicting evidence.  We overrule issues
one and two.

Flores urges in issue three that the imposition of
the mandatory sentence of life imprisonment in the Texas Department of Criminal
Justice, Institutional Division, rather than affording him a punishment
hearing, violates the Eighth and Fourteenth Amendments to the United States
Constitution.  A mandated life
imprisonment does not violate the Eighth Amendment prohibition against cruel
and unusual punishment.  Harmelin v.
Michigan, 501 U.S. 957, 994-95 (1991). 
We overrule issue three.

The judgment is affirmed.

 

PER CURIAM

 

July 19, 2007

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J.,

Strange,
J., and Hill, J.[1]











[1]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth sitting by assignment.